May it please the court. Good morning. My name is Scott Wilkinson. I represent the appellate, Gregory Obey, and also represented Mr. Obey following his original remand from this court in the district court and at the sentencing in this case. I would like to make one comment up front about the first issue in this case concerning whether the government breached the plea agreement in this case. And it's engendered by the government's response in terms of whether they undermine the plea agreement and the promise that was made by the government in this case. In terms of kind of setting the table for this comment, one of the things that I want to suggest to the court is that I think there's a fundamental difference between a sentencing recommendation, the government's opinion as to the ultimate sentence that should be imposed in a case, and stipulations or promises that relate to guideline provisions. When you have a sentencing recommendation, it's an opinion of the government as to what the ultimate sentence should be. When you have guideline provisions, there are, to be sure, factual aspects to guideline applications, and there are legal requirements to whether a guideline provision applies or doesn't apply in a particular case. In this instance, the sentencing recommendation in this case is kind of a hybrid of both of those issues. In one sense, it is a sentencing recommendation because the government promised to make a recommendation of an ultimate sentence. Its opinion is as to what sentence would be sufficient but not greater. Right, and the government did that twice at the sentencing hearing pretty clearly. Actually, I think they did it three times where they recommended to the court that they adopt the sentencing recommendation. But the point that I'm trying to make and what I want the court to be aware of, and I don't know that it's apparent from the briefs to the point where they are now, is that when we came into sentencing, we were aware, both the government and the defendant and certainly the court, that the defendant's guideline or advisory guideline range was 240 months. The government's promise was to make a recommendation of an 18-year sentence. So in this case, the government's promise as to the sentence they would recommend was below the otherwise applicable advisory guideline range. In that circumstance, I think it is incumbent upon the government, I think it's implied in terms of what the Brown case talks about, for them to make an argument either as to a departure or to a variant sentence from the otherwise advisory guideline range. The government attorney at the sentencing even commented in his opening sentence that he was asking the court to make a variant sentence from the 20-year advisory guideline range. And I think that's a fundamentally different situation. When he's asking the court to make a departure or a variant sentence from the advisory guideline range, I think it's incumbent upon the government to explain to the court, to provide a basis that would allow the court to either depart or to vary from that. And in this case, even though, Judge Thacker, as you pointed out, the government did request that the court impose an 18-year sentence, they did not provide the court with any reason that I'm aware of for a departure or a variance from the advisory guideline range of 240 months. What I'm getting at ultimately is that there are a number of ways that the government can undermine an agreement or a promise. It's not simply limited to situations where they express reservations about it, as in Buchemal and Peguera. In those cases – What is the best case for the proposition that you're espousing to us? Because we have here the government three times saying that this is the sentence at which. There's nothing that is in the record that's – there's no – like, I have personal reservations about it. There's nothing like that. The best thing you have is – I mean, I can't give you the actual rationale. We could have been 18 months – 18 years, 19 years. We arrived at 17 years. We arrived at 18. So I guess I don't know that there's any case law that really is helpful to you. Well, I would admit to the court that I have not found a case or a court that's expressed the wisdom and the judgment to do what I'm asking yet. But, again, what I am suggesting is that – I haven't found a case to the opposite effect either. But all I'm suggesting is that there are other ways to undermine it. When the government comes in and says we want the court to impose an 18-year sentence, which by definition has to be a departure or a variance from the advisory guideline range, they don't provide the court with any basis for that. They don't have to advocate for it. I'm not necessarily saying they do. Certainly in a situation where it's an ultimate conclusion, an ultimate opinion about a sentence that is sufficient but not greater than necessary, I think butch them all in the Fourth Circuit cases that say maybe all the government has to do is state what their sentence recommendation is. That's one situation. The other situation, I think, is the guideline provisions where there are legal and factual aspects to that. The government, for example, if you're going to take a complicated one like a safety valve provision, the government stipulates to a safety valve provision, but then they go on to argue that the defendant possessed a firearm or there was violence. You do undermine your stipulation in that sense. It's not exactly, but it's really a hybrid of those two because you've got to get the court legally to be able to depart or vary. Even if you look at the 3353A factors that the court has to look at to determine whether a sentence is sufficient, the only reason that the government offered was witness problems, and I don't know of any 3553A factor that considers the relative strength or weakness of the government's case as a basis for imposing a sentence. So in that sense, I think that it is a situation that does undermine. That's certainly a reason for the government to enter into a plea agreement in virtually, I mean, I would think in almost any case weighing the strength and weakness of their case. Well, in this case, it was a strength and weakness of a particular problem with one witness, but in terms of its promise to the government. Well, you take those same things into account when you're negotiating. Both sides do that, the strength of the case, whether you're going to enter a plea or not. I agree with that, but in terms of 3553A factors, that explanation, that excuse doesn't fit into any of this. But the 3553 factors that would advocate or support that sentence are for the defense counsel to address, and you did that. Well, I certainly tried. I provided or at least tried to provide a number of ways that the court could depart or vary or find under 3553A factors that a sentence less than the advisory guideline range, in this case of 240 months, was achievable. In the government's case, all they did was identify a factor that doesn't fit into any of those categories. Then you add on top of that a statement by the government attorney in sentencing. There's no rhyme or reason to what the government did as the agreement that it came to. But there was a rhyme or reason. Their case was weakened off. The witness went south. That's what they said. But, again, the argument is it doesn't fit under, it doesn't allow for a departure, it doesn't allow for a variance, it doesn't fit into any of those 3553A factors for a court to depart or move away from. I thought it used to fit in the Department of Justice guidelines on negotiating pleas and strength of the case. That may be true. It might not have anything to do with sentencing guidelines, but it has to do with plea negotiations. That's correct. You wouldn't argue it doesn't have anything to do with plea negotiations. No, it doesn't. But in terms of the government's promise and its recommendations to the court, all I'm again suggesting to the court is there are different ways to undermine a sentence. And when you follow all of that up with there's no rhyme or reason to the sentence that they came to, that's what the government said at sentencing. The sentencing judge in this case is certainly a competent judge and a highly intelligent judge. I think he understands what he's being told. I mean, again, you've got to remember the government didn't object to a single, it didn't raise a single objection to the pre-sentence report, and they opposed every single objection that the defendant raised. And, again, I don't know that it was all that clear in the papers, but I wanted to bring that matter to the court's attention because there are other ways to undermine a promise that the government's made in terms of a sentencing recommendation. With respect to the second issue, and I suspect it may be the court's focus in this case, I would like, again, to begin with making one correction or comment about the government's response in this case, and it appears at page 25 under their subsection B discussion of issue. The second sentence the government writes, and I quote, in this case, after considering the arguments of counsel, the 18 U.S.C. section 3553A factors, and its sentencing authority, the district court specifically ordered the defendant's sentence to run consecutively to any unimposed state sentence. It's not. From my standpoint, the way that I read that, it's not correct. And I would point the court to page 98 of the joint appendix. The sentencing judge in this case did not mention or discuss the consecutive versus concurrent issue until after it announced the sentence in this case. It appears at page 98 the court imposes the sentence. State or federal. Is that what you're getting at? I'm sorry? It says the court said this sentence shall run consecutive to any other state or federal sentence. Is that what you're getting at? No, ma'am. I'm a bit before that. Okay. In terms of the court announced its sentence, and the very next sentence is the very first time in this entire sentencing proceeding where the court discussed the consecutive sentence that it intended to impose. There was no mention of the consecutive possibility in the pre-sentence report. Certainly there was nothing in the plea agreement. There was nothing in my sentencing memorandum or the briefs. Anything leading up to this. If Mevin, United States Mevin versus Mevin, one of the cases that the government cites, is correct, then the court has to consider the 3553A factors with respect to the consecutive nature of the sentence that it wants to impose under 3584. It has that authority. In certain circumstances, it has that authority. But in this case, it was not brought up. It was not discussed. The parties did not have an opportunity to comment, to advise the court about the 3553A factors. Again, for the very first time, it was mentioned after the court announced the sentence, the very end of the sentencing. Okay. Are you going to focus at some point on the fact that running the sentence consecutive to a future federal sentence was beyond the statutory and legal authority of the court to do? Yes, Your Honor. A small correction, you ordered the sentence to run consecutive to an unimposed state sentence as opposed to another federal one. On that question, I think the issue is whether Setzer, as was said in Mavudis, whether it implicitly overruled United States versus Smith. It certainly overruled some of it. It certainly did. There are... She says it's the author of Smith. There were both of the cases. Both Setzer and Smith began their analysis of whether the court, the district court, had authority to order a consecutive sentence by looking at what's allowed under 18 U.S.C. 3584. The Smith court said that the court's discretion or authority to impose consecutive sentences was limited to what was in the statute. The Supreme Court, in large part, agreed that the circumstances where the court has the authority or discretion to impose consecutive sentences exist in the statute, but it also exists without it. There are traditional or common law areas where courts have traditionally exercised discretion and authority to impose consecutive sentences. So to that extent, it certainly overruled Smith since Smith was limited to the statutory situations where a district court can impose... Well, there's language in Smith that goes more broadly than that. Incorrectly now. Incorrectly now, correct. But then the Supreme Court went on to identify the areas where it believed that the courts had traditionally, from a common law standpoint, been able to exercise discretion and had the authority to impose consecutive or concurrent sentences. One of those was with respect to other sentences that they posed in the same time. It seems to be pretty much the same authority that's granted in 18 U.S.C. 3584. The second was that sentences that have been imposed in other proceedings, including in state court, again, that seems to fit within the authority that exists under 3584. The last one, and I think where this issue ultimately falls, the Supreme Court suggested that sentencing courts have always had the discretion where a federal judge anticipates the state sentence that has not yet been imposed, and that, I think, is the crux of the case. The court... Did you make any objection to this below? Again, no, Your Honor. So we review for plain error? I think you do. At the time, again, the fact that it wasn't considered, it wasn't discussed, the court brought it up at the very end of the sentencing and then cited cases that I hadn't read or wasn't even aware of in terms of being able to object to that. But I think... You're saying you didn't have an opportunity to object? Your Honor, I didn't have a basis to object. Again, it wasn't something that was brought up that the parties were considering. It just happened, and the court cited two cases. So you agree it's plain error review here? I'm sorry? You agree that it's here on plain error review? I would, Your Honor. But in that circumstance, again, Mevin talks about the court discussing the 3553A factors with respect to the consecutive sentence, listening to the arguments from the parties and considering those arguments in the comment. We didn't have that opportunity in this case. It was never brought up beforehand. But ultimately, I think it is a plain error analysis. When you get to the ultimate issue of what is an anticipated state court sentence, you've got to remember what the district court in this case knew at the time, and that appears in paragraph 32 of the pre-sentence report. All the court knew was that Mr. Obey had been charged in September of 2013 with a murder that was allegedly committed in October. That goes to really your argument. You had argued the case in the Supreme Court. I mean, they implicitly rejected that argument, right? It can be an anticipated state sentence. Well, it comes down to what is an anticipated sentence. The Supreme Court uses the phrase seven times in its opinion, and it precedes, the adjective precedes. Well, this one was in the pre-trial report, unlike something that was not in the pre-trial report. There was a sentence in this pre-trial report that said the defendant had been charged for a murder back in October 2011, and that was it. And I take it that, has that trial ever taken place? It still has not to this day. He was indicted for two years after the murder allegedly happened, and here it is almost two years later. If you had objected to this, and I quite take your point about the district court didn't give you any notice, and I gather that the government didn't argue that these sentences should be imposed consecutively. There was not a single mention of consecutive sentence until the court announced it. So that if you were taken unawares, if you had had in hand a good argument about it, you wouldn't have been able to make any argument with respect to the federal sentence, right? I mean, you would have only been able to make an argument with respect to the federal sentence and the other language. The state sentence, we would be left with only if the court had said, yes, I've read what you say about Setzer and you're right, so instead of this sentence, I'm going to say, pursuant to Setzer, this sentence shall run consecutive to any anticipated state sentence. That would have been not error, right? Again, Your Honor, and I understand the point. I mean, you've got to understand what the court said. It didn't say that. No, it didn't say that at all. I'm just trying to give you the benefit of, you know, what you say you should have had was notice or argument or something about Setzer. Well, the argument I think would have come down to, and what it is here, is what does the Supreme Court mean by anticipated? Right. And you would have been left with, but if the court had actually said, you made your argument and it said, you know, I've heard what you said, and you're right about Setzer, and so this sentence shall run consecutive to any anticipated state sentence, that would have not been error. That would have distracted Setzer language. Well, again, it comes back to what does anticipated mean. It seems, I mean, I've looked at, you know, anticipated, expected, foreseen, and it talks about anticipated sentence. It seems to be situations, and, again, I'll admit to the court that I haven't found a case that bases its decision on this fact, but it seems to be situations where the underlying other offense, whether it's state or federal, is a related situation. Again, it says anticipated sentence. It gives the court some indication that it understands what the defendant did in this other case, and it can make a judgment about what's an appropriate sentence. In this case, you don't come even close to that. He's just charged. He's not even been tried. There's been no finding of guilt. In that situation, that essentially is the argument, that that is not an anticipated sentence. Thank you, Your Honor. Thank you very much. Ms. Mayparka. Good morning, Your Honors, and may it please the Court. My name is Jennifer Mayparka, and I represent the United States. I'd like to first start with the breach of plea agreement argument, and then I'll move to the second argument, which is the Stetzer argument. One thing that I think is clear from the record here is that the AUSA at the sentencing hearing was the AUSA who negotiated this plea agreement and understood both the spirit and the actual terms of the plea agreement. And this AUSA, during the entire sentencing hearing, was the only person who advocated for the 18 years. In fact, it was the AUSA who raised that issue with the court, who said to the court, by the way, Judge, so that you know, counsel and I both have decided we agreed to recommend an 18-year sentence, and so I'm going to ask you to impose that. He followed that with an explanation as to why he engaged in the plea agreement. And the backdrop of this case is very significant as to why he would do that. This case was remanded after the defendant had gone to trial and been convicted and had been sentenced to 45 years in prison. The case is now back before Judge Dever. And so he explains to Judge Dever, as you would expect any advocate to do, coming before the judge and in a resentencing situation, explains to him why he engaged in the negotiations and why the negotiations ended up at the place that it's at. So after he explains his witness problem, explains that the witness had become reluctant and things of that sort, he said, and for those reasons we are asking you to impose an 18-year sentence. Now, he did use the term no rhyme or reason, but as the court noted, the reason he said that, and the backdrop here is that this is a drug prosecutor, and so he is talking to the court and explaining to the court why he has come up with the number 18, not why he's recommending that sentence, but why he has come up with the number 18. What he's talking about is quantification, valuation. So after he's outlined basically intangible things, how do you put a value on the fact that your witness is reluctant? What number do you place on the fact that the witness has impeachment problems? He said to the court, quite honestly, Judge, I don't know that I could quantify why 18 years to you, but that is the number that we've agreed to, that is the number that we've arrived at, and we're asking you to impose that sentence. And so that the terms no rhyme or reason, if put in context, will explain to the court why he was doing and saying what he was doing. Perhaps inartful, but it certainly was not him reneging on his promise to recommend 18 years. He did it a third time as well. When he made his 3553A arguments, he said to the court, Judge, I know all of these things, and those were just factual things in the record. That was the defendant's record. And this court has said that AUSA is obligated to talk about the defendant's prior history before the court. After he did that, he said, look, I'm just going to summarize. But, Judge, we believe that 18 years is the sentence that is sufficient, but not greater than necessary to achieve those 3553A factors. So on that record, it is very difficult to say that the AUSA breached the plea agreement. It was nothing like in Brown. He did not express any reservations. He did not express any unhappiness about the negotiation that he had come to. And he fulfilled that promise, and he did it in a very direct way, so that even the court understood that he was sincere in his efforts. In fact, the court says, I understand your argument. I understand your recommendation. I believe it lacks merit. So the court even accepted that he was, in fact, recommending 18 years in this case. Now, the government had specifically retained the right to make sentencing arguments, and also it is important to note in this case that we did more than be promised. We did forcefully recommend the 18-year sentence, and the Supreme Court has said that we're not obligated to be persuasive or we're not obligated to do anything other than what we've agreed to, which is to recommend a sentence. You're going to address the second argument, right? Okay, I'm going there right now. Thank you. So we get to the second argument, which is the defendant's argument that Setzer excludes what the district court did here. The first thing I'd like to point out is on page 84, well, before I get there, on page 90 of the joint appendix, the judge did make inquiries about the state sentence that had been noted in the joint appendix at paragraph 42, and specifically asked the AUSA on page 90 about the indictment there, and he said, I don't know the nature of the plea negotiation, but the trial is still scheduled. It's my understanding. So that was the first time that Judge Devere actually mentioned the state sentence. And then going over to page 94 was actually the time that he imposed the state sentence and he imposed the federal sentence to run consecutive to the state sentence, and he did it specifically as it relates to paragraph 32, reading from the bottom of page 94. He said, this sentence shall run consecutive to any other state or federal sentence, including any unimposed sentence that he might receive, but for the conduct reflected in paragraph 32 of the PSR. Yes, but in the previous sentence or two, he says, pursuant to Setzer, this sentence shall run consecutively to any other state or federal sentence, including any unimposed sentence that he might receive, but for the conduct reflected in paragraph 32 of the PSR. So he's made a general, under the general topic of any other state or federal sentence, he refers to this particular state prosecution. Yes. But you would, I think, acknowledge that Setzer does not quite go as far as the district court said it did. It doesn't quite go as far, but I believe that the district court here was focusing on paragraph 32. The next sentence he corrected himself. Yes, exactly. He corrected himself and he limited it to the state sentence. Exactly. But then the order got it wrong. Why didn't somebody fix the order? Well, I think that. Sentencing order mentions the state and federal. But the order can certainly be fixed. Doesn't it? Yeah, it says federal and state. Yes. But the second time, at the bottom of 94 and the top of 95. Yes. He limits it to an unimposed state sentence. Correct. And he then talks about rule 30 or page 32. Yes. So he was talking about what was going on over in Johnston County. That's all it seems to be. He says it both ways. Yes. But the second time he says state sentence. He does say state sentence, but he doesn't say, you know, I am now limiting to this state sentence. He makes the specific connection. But I think the government could come up with another state sentence or a federal sentence that would run consecutive. That they could use for this. I don't read this as forbidding that. Do you? I read that as forbidding it because I believe that what the judge did was he started off in. It was a manner of speaking. He was being more general. You said it only applies to Johnston County. Yes. All right. But the order. Courts normally speak through their. They do speak through their order. Correct. If there's a discrepancy between the order and the transcript, the order governs. Correct? Yes. All right. The order says federal or state sentence. Including. Including paragraph. That's right. Paragraph 32. So the order is wrong according to what you've just told us. So why didn't somebody fix it? Well. It's wrong. It's inconsistent with what you just told us. Yeah. And consistent with what I suggested might be the reading of what the district court did. I'm sorry. I didn't hear that, Judge Motz. I think it is consistent with what I suggested. In other words, he made the general statement. Yes. And then this was an example that he had in hand of that general statement. Yes. It wasn't to be a correction of the general statement. At least that's what the order looks like. It's consistent with that reading of the record. That the order means what he meant it to mean. That it says what he did. State or federal. Well. It's correct. Any state or federal. Right. Any. It would have been any. I mean, Stetzer stands for the proposition that it has to be anticipated. And so that in this case, I believe what was in the court's mind. Because he had read Stetzer. In fact, he mentioned it. That he was thinking of that particular sentence in paragraph. But then the order governed. The order governs to the extent that it expresses exactly what the court wanted to. And let me just say this. It had never come up that the order was expressing something different before Judge Dever. That's right. Well, maybe it didn't express anything different. It's different to what you said. Right. But it's not different than what you said. He says federal or state, including what's going to come under paragraph 32, which is Johnson County murder charge. So it could be another state charge. It could be another federal charge of any nature, I assume. Although that doesn't make much sense because he's probably going to be in prison. Well, let me ask you this. Yes. Backing away from that, I have two questions. The first is, if the order was what the judge said to, would you acknowledge that that was error under Sitzer? I would acknowledge that it has to be an anticipated sentence. Right. So it doesn't say that. And the word anticipated is not in the court's judgment. And so if what the court says. And he also talks about a state and federal. He talks about both. So it would be error under Sitzer, right? In terms of the federal, I don't think it would be error. Right. But he says both. So, you know, it's error. It doesn't have to be error in every respect, but there's error. I would acknowledge that it wouldn't be clear what exactly Judge Dever meant here. You don't confess error. No. But you do confess error. It seems to me you made a harmless error argument. And that would be my second question. But it seems to me that there is error here. Judge, if you read it to mean that Judge Dever. Well, you've got to read it to mean what it says. Can you just maybe get beyond. Assume that we all three think there is error. Okay. You need to address the next step. Right. So the next step would be that it would be harmless error. No, plain error. It's all plain error review. That it wouldn't have affected a substantial right. Well, why wouldn't it not be playing? Why don't you? Why don't you plan your feet on wrong too? Okay. If it's error. If it's error, then it wouldn't be plain error. It wouldn't be plain error or not plain error. Well, because the argument that I was making before, it would depend on how you read Judge Dever's words. Yeah, but. What you read them to mean. Now, if you read them to mean that plainly it does not fall within successor, then I would say, yes, it's plain. It's error. It's plain error. And then we now get to, did it affect a substantial right? Fair enough. Well, I think we heard what you said. I would have thought your argument, the arguments that you're making about what the district court said, what it said, I would have thought that those arguments would go to, yes, it's error, but it's not plain. But you're eschewing that argument. No. In other words, I think Judge Thacker directed the question to me, assume that, so that we needed to move. No, but she just said, assume it's error. Assume it's error. Then you have all these other things that you have to do to show plain error. That's right. And you jumped immediately to a denial of his substantial rights. And what I was suggesting to you is that maybe all these arguments you're making about whether it's error or not go to whether it is plain error. Yes, and I agree with that. So my confusion was. I didn't hear you say that. I'm saying it now, Judge Thacker, Judge Motz. So my confusion was that I thought you were getting past plain error as well. So if it's error, then it's error that's not plain. Why not? Because it is not plain to me that Judge Dever meant any anticipated sentence. And even if he did, even if he did mean that this was any possible sentence, it is not clear that Setzer excludes that as a possibility that the judge has within his discretion. The proper interpretation of Setzer and Smith don't make it plain. It's not obvious enough. Is that what you're trying to say? Those specific points were never really addressed in Setzer, at Smith and certainly not in Setzer, where you get to the fine point of is it any future sentence? No, we're talking about putting the state sentence. Yes, the state sentence. The state sentence is addressed in Setzer, and there's a special footnote sort of accepting it out, and maybe we'll reach that. That's for another day. Yes. Well, okay, so we now have your argument on that this was not plain. And going further, then you have an argument, I thought you said, about it didn't affect substantial rights. What's that argument? And that argument is that, first of all, counsel just told you that nothing has happened with the state case. Well, it's going to happen. It doesn't have to have happened. It's going to affect his substantial rights. And even if he does get a sentence that is consecutive to a state sentence that is imposed, that is what Judge Dever intended to happen. And that is exactly the sentence that Judge Dever wanted to give him. In fact, in the record, Judge Dever says he rejected the government's for 18 years and said, I believe that he should get every day that is available to him, and he should be incapacitated for as long as possible. And in coming up with the sentence that the judge believed was appropriate for this case, he crafted the consecutive nature into his sentencing so that nothing would change. Judge Dever intended for this defendant to get a sentence that was consecutive to any state sentence or any other sentence that would be imposed. Thank you very much. Thank you very much, Your Honor. We ask that you sustain a judgment in this case. Your Honor, just to pick up on that last point, I think that may be exactly what Judge Dever intended. I mean, everyone knows that he originally sentenced Mr. Obey to 540 months, and then by virtue of the plea agreement that was offered in this case, the court's acceptance of that plea agreement, his hands were tied essentially to the statutory cap. If I could graft a quick phrase onto not only what Judge Dever said at sentencing first and then the sentence that Judge King mentioned, but then his written order followed track exactly what he said initially at the sentencing. It's only that middle sentence that creates some difference. If you turn to the substantial right, because we've conceded that it's here on plain error, right? Yes, ma'am. That's the standard we review it. Yes, ma'am. So if it didn't affect his substantial rights, so if we should agree with you that there was error here and indeed send it back for resentencing, couldn't the district court limit the consecutive sentence to this pending state sentence, pending state? Of course the court could. The small graph I was going to add to this, the way that it really reads I think is… It could consistent with Supreme Court law. Correct. Is that he's saying consecutive to any federal or state sentence, including but not limited to the state court in sentence in paragraph 32. Who knows what that sentence is going to be again if there ever is a sentence, what the sentence ends up being, whether Judge Dever felt like that would have added up to what he originally thought was a sufficient but not a sentence not greater than necessary 45 years. He may very well have intended to get to that point in his mind since he thought that that was a sufficient sentence previously. The combination of any sentence that he got in the future, which I would agree exceeds even censor. Again, the court used the word anticipated. It means something in this context. Thank you, Your Honor. Thank you very much. Mr. Wilkinson, I understand that you're court appointed. I am, Your Honor. We very much appreciate your efforts. You've done a fine job for your court. My pleasure, Your Honor. Thank you. We will come down and greet the lawyers
judges: Diana Gribbon Motz, Robert B. King, Stephanie D. Thacker